**McCLINTOCK et al. v. WESTOVER, Collector of Internal Revenue.**

**No. 11587.**

Circuit Court of Appeals, Ninth Circuit.

April 6, 1948.

John T. Riley and Richard K. Yeamans, both of Los Angeles, Cal., for appellant.

Theron L. Caudle, Asst. Atty. Gen., Tax Division, Sewall Key, A. F. Prescott, S. E. Hanson and Fred E. Youngman, Sp. Assts. to Atty. Gen., James M. Carter, U. S.

602

Atty., Edward H. Mitchell and George M. Bryant, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before MATHEWS, STEPHENS and ORR, Circuit Judges.

STEPHENS, Circuit Judge.

L. H. McClintock and Florence L. McClintock, copartners, doing business as the McClintock Display Company, appeal from a judgment of the district court, denying them a recovery of taxes paid in accordance with an alleged illegal assessment of manufacturers' sales taxes. The taxes were levied in March of 1943 by the Commissioner of Internal Revenue for the thirteen months' period from October 1, 1941, to October 31, 1942, inclusive. The taxes as levied were paid, and a claim for refund had been made and rejected.

The taxpayers operate a business in which they manufacture decorative trimmings made in part of rubber, simulating fresh parsley. The trimmings are used in meat markets and similar establishments in decorating displays of meat. The taxpayers entered into agreements with their customers, entitled "Rental Agreement" [1] to let their products to their customers for limited periods, and in connection therewith to render certain services in the replacement or renovation of soiled or damaged trimmings. The service usually called for a replacement of 50% of all the trimmings approximately every sixty days.

The manufacturer's excise taxes imposed and due on the transactions were computed by the Commissioner on the basis of the total gross revenue derived from the agreements for the taxable periods in question.

The appellant-taxpayers alleged that they manufactured a taxable rubber article, and concede that it is within the scope of § 3406(a) (7), Internal Revenue Code, as it existed from October 1, 1941, to October 31, 1942, 26 U.S.C.A.Int.Rev.Code, § 3406(a) (7). They dispute, however, the manner in which the amount of the manufacturer's excise tax was computed. The trial court, upon its conclusion that the rental agreements were leases, constituting taxable sales within the meaning of the taxing statute, held the computation to be made

---

[1] The form of the "Rental Agreement" is as follows:

"Rental Agreement
McClintock Display Company, Lessor
The Original Rubber Leaf Decoration

3044 Riverside Drive     Phone MOrningside 12113
C20396     Los Angeles, Calif., October 1, 1941
Lessee X Super Market
2000 Connecticut Ave.,
Newark, New Jersey     District

[X] New Contract
[ ] Added to
[ ] Picked Up
[ ] Contract Cancelled
Rubber Leaf
20—18″ clips installed
20—18″ R. L. at 7¢—$1.40

| | |
|---|---|
| Total Feet 30 | Total 18″ Units 20[46] |
| | Amount |
| 20 Total Holders Installed ) | : |
| Rubber Leaf Exchanged ) | : |
| Collected for 3 Month ) | : |
| Rent Payable in Advance ) | : |
| ) | Total Collected 4:20 |

Rent from 10-1-41 to 1-1-42
Received Rent Smith Representative
Merchandise installed is the property of McClintock Display Co. This lease is revocable by McClintock Display Co. or lessee upon ten (10) days written notice.
Accepted by .............................Lessee
Form R-A Western Salesbook Co., 3049 1. 12 St., L.A., An. 10338-9751."

upon the proper basis. Appellants present a variety of contentions, none of which, in our opinion, are meritorious, and we treat them as briefly as seems possible to an understandable analysis of several technical statutory tax provisions.

The primary question raised is whether the "Rental Agreement" constitutes a lease. Appellants argue that the "Rental Agreement" is a mere accounting slip and not a lease form. It does not purport to contain the entire understanding of the parties, it does not describe any property leased to a customer for any particular period of time, nor is there in it, or was there in the applicable agreement, any requirement that appellants should furnish an article made of rubber.[2]

The government argues that the agreement in question is a lease and constitutes a taxable sale within the statute; that the excise taxes were therefore properly assessed upon the total gross revenues derived by the taxpayers; and that the taxpayers were "lessors" and not "users" of the rubber products manufactured and leased by them in operation of their business. The issue as set forth by the government's brief is "whether the aggregate amount of the admitted 'Gross Revenue' received by the taxpayers under that single document which constituted a lease must be considered a statutory 'taxable sale' subject to tax on the total gross price for which the taxpayers' articles were thus leased."

The government also argues that the rental agreement constituted a bailment for use, the soiling or destruction of the articles during such use being immaterial in that most personal property is worn out and depreciated by use over a short or long period of time. The fact that the supplying of renovated or new articles as the previously leased units became no longer usable was immaterial since the customers kept them under a bailment for use and the taxpayers kept title thereto.

The trial court followed the contentions of the government in general.

Section 3406(a) (7) of the Internal Revenue Code imposes a tax on the sale of any taxable article. Section 3440 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3440, imposes the tax on all articles leased instead of sold by providing that the lease of the article shall be considered a taxable sale. The rental agreement in the instant case gave the taxpayers' customers the possession and use of the rubber products over a specified period of time in consideration of the rentals paid therefor, and, in our opinion, the court below properly held that such a transaction constituted a lease within the meaning of § 3440, as amended, and, hence, are taxable sales under § 3406(a) (7). The findings of the District Judge are fully supported by the evidence, and the conclusion that the rental agreement was a lease is borne out by the intent of the parties as well as the substance and form of the instrument used. It is clear that the taxpayers and the customers both intended and considered the instrument and its renewal to be a lease of an article distributed and serviced thereunder. The agreement contains all the essentials necessary to establish a valid lease—a definite agreement on the extent and boundary of the property leased, a definite and agreed term, a definite price of rental and the time and manner of payment. See Levin v. Saroff, 54 Cal.App. 285, 201 P. 961. The intention was present; there was a right of possession and use continuous in nature under the agreement; and there was specific property described—"Rubber Leaf 20-18 R.L. at 7¢–$140." See G.C.M. 11410, XII-1 Cum.Bull. 382, 384 (1933). Lease terms were continuously used by the party in the negotiations and discussions concerning the agreement, as well as in the testimony given by the taxpayers' witnesses.

---

[2] The case of Heryford v. Davis, 102 U.S. 235, 244, 26 L.Ed. 160, is cited with the following quotation therefrom: " * * * It is not to be found in any name which the parties may have given the instrument, and not alone in any particular provision which it contains, disconnected from all the others, but in the ruling intention of the parties, gathered from all the language they have used. It is the legal effect of the whole which is to be sought for."

Thus the amount of gross revenues received from the agreements constituted rentals, as found by the trial judge, the services rendered being incidental thereto.

The taxpayers rely in their argument upon the case of People's Outfitting Co. v. United States, 58 F.2d 847, 74 Ct.Cl. 419, which involves the question of whether a particular document constitutes a lease or a conditional sale. The court held that the transactions therein constituted conditional sales and not leases; thus, no excise tax was payable under the statute, § 604 of the 1924 Rev.Act, 26 U.S.C.A. Int.Rev.Acts, page 94, where final payment was not made before February 26, 1926, the date of the enactment of the Revenue Act of 1926.

▆ It is our opinion that the cited case does not support appellants' contentions, to the effect that although the statute says a lease—what was intended was a lease that amounted to a sale. The Act says "lease" and no limitations are provided. We are not at liberty to hold that Congress meant only those instruments resembling sales, i.e., an instrument designated a lease which provides that title shall pass on payment of rent reserved. We do not construe § 3440 as meaning that an excise tax accrues whether the article is sold or leased by an instrument which provides that title shall pass when the rent reserved is paid. The appellants mistakenly conclude that since title would never pass under the so-called rental agreement, it was not such a lease as would be within the purview of § 3440.

Another attack is made upon the judgment upon the argument that it erred when the district court failed to construe § 3441(b) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 3441(b), as prescribing the manner in which the tax should be computed in the case of taxable sales other than taxable sales at wholesale, and when it failed to construe § 3441(c) of the Internal Revenue Code, as prescribing the time of payment of the tax in the limited instances therein enumerated.

They argue that the tax is not to be computed on the money collected or gross revenue as was done herein. They claim that § 3406(a) (7) places a tax on the price for

which the articles are sold; § 3440 defines the lease of a taxable article as a taxable sale; and assuming that the agreement was a lease, there would be a taxable sale based under § 3406(a) (7) on the price for which the article was sold.

Section 3441 defines "Sales Price" and subsection (a) thereof relates to taxable articles sold at wholesale, but the section is not applicable, as it is not contended that the articles were leased at wholesale. Hence, upon the determination of the price for which appellants sold their products, subsection (b) of § 3441 must be consulted to decide the issue. The section reads:

"(b) If an article is—

"(1) sold at retail;

"(2) sold on consignment; or

"(3) sold (otherwise than through an arm's length transaction) at less than the fair market price;

"the tax under this chapter shall (if based upon the price for which the article is sold) *be computed on the price for which such articles are sold, in the ordinary course of trade,* by manufacturers or producers thereof, as determined by the Commissioner." (Emphasis added.)

Section 3441(c) reads:

"(c) (1) In the case of (A) a lease, (B) a contract for the sale of an article wherein it is provided that the price shall be paid by installments and title to the article sold does not pass until a future date notwithstanding partial payment by installments, (C) a conditional sale, or (D) a chattel mortgage arrangement wherein it is provided that the sales price shall be paid in installments, *there shall be paid upon each payment with respect to the article that portion of the total tax which is proportionate to the portion of the total amount to be paid represented by such payment."* (Emphasis added.)

Section 3441(b), it is urged, states the manner in which the tax is to be computed, whereas § 3441 (c) states the manner in which the tax shall be paid. Several cases are cited to determine when the tax is payable, all of which are in reference to Regulation 48 (1924), a prior regulation. Appellants cite an interpretation of 619(c) of

the 1932 Revenue Act as the precursor of § 3441(c), and which was the same except for subsection (d) of § 3441.[3] The appellants conclude from the memorandum set out in marginal note 3 that only leases which are similar to sales are taxable and inclusive therein, that is, that leases of every type were not intended to be included in the sections controlling the question before us. And further, that said memorandum did not decide that § 619(c), nor § 3441(c) (1), required a tax which is based upon or measured by the total rental payments received by lessor. It decided, so appellants contend, that the measure of the tax was prescribed by another section, § 602 of the 1932 Act, 26 U.S.C.A.Int.Rev. Acts, page 608.

Appellants go on to claim that § 3441(c) (1) is applied in determining whether a taxable transaction had occurred (i.e., leasing similar to a sale); and that a different section prescribes the measure of the tax, since that section does not prescribe a measure of the tax according to the ruling of the General Counsel; and that if the appellants leased their product and thereby entered into a taxable sale under § 3440, they did so either at wholesale or retail, and in either instance became subject to the manufacturers sales tax, based on the fair wholesale price of the articles so sold or

---

[3] General Counsel of the Bureau of Internal Revenue in a memorandum 11,410, reported in Cum. Bull. XII-1, pp. 382-384, discusses 619 (c) (1932 Act):

"Under these contracts the rubber companies, as manufacturers, agree to furnish tires and tubes to operators of busses at a specified rate per mile. The manufacturer also agrees to service the tires and retains title thereto. * * * It is the opinion of this office that the tires and tubes covered by the contracts are leased within the intent of the Revenue Act and are taxable. The operator of the busses agrees upon termination of the contract, unless a new contract is entered into, to purchase the tires on the basis of the manufacturer's price list, less the amount already paid under the mileage contract. In the case of damage by accident, abuse, or fire the cost of repair is to be borne by the bus company. In the case of destruction by accident, abuse, or fire the bus company is to be charged at the manufacturer's list price, less mileage paid.

"Section 604 of Title IV of the Revenue Act of 1932 imposes a tax on tires and inner tubes sold by the manufacturer, producer, or importer. Section 618 of the Act provides that:

"'For the purposes of this title, the lease of an article shall be considered the sale of such article.'

"The questions on which an opinion is requested are as follows:

"Question 1. Should these contracts be considered sales contracts or leases?

"Question 2. How should the tax be computed? * * *

"The bailments accomplished by the contracts in question are within the purpose of the statute. The tax is primarily on sales. Leases were also made taxable because of their similarity to sales.

On page 41 of Senate Report No. 398, relative to the Revenue Act of 1924, it is said:

"'Section 704(a): Since dealers frequently dispose of goods under a form of contract termed a "lease", which in reality is a contract for a sale with payment by installments, it has been expressly provided that the tax herein levied applies to such transactions.'

"Section 618 of the Revenue Act of 1932 provides that for the purposes of Title IV the lease of an article shall be considered to be the sale of such article. On page 44 of Senate Report No. 665, relating to that measure it is stated that the foregoing section was retained in the law so that the tax could not be evaded by a lease contract which does not involve passage of title.

"The transactions in the instant case may also be viewed as contracts for the sale of tires with payment by installments measured by the mileage covered. By the contracts in question the parties get practically the same results that sales would produce. The bus company gets the use of the equipment and the manufacturer receives a money compensation approximating, it may be assumed, the sale price of the equipment. * * *

"It is the opinion of this office that tires and tubes covered by the contracts are leased within the intent of the Revenue Act and are taxable. This answers the first question. The answers to the second and fourth questions are indicated by S.T. 496 (C.B. XI-2, 455). It is stated therein:

"'The tax on tires and tubes supplied under a mileage contract is incurred at the time when such tires and tubes are delivered by the tire manufacturer to his customer and should be computed on the full weight of such articles.' * * * *.'"

leased. If leased, the tax is payable as prescribed by § 3441(c), supra. If the article is sold at wholesale, the tax is computed on the price for which sold. Int.Rev. Code § 3441(a). If it be sold at retail, it is computed on the fair wholesale price. Int. Rev.Code § 3441(b). If used by the manufacturer, the tax is computed on the fair wholesale price. Int.Rev.Code § 3444, 26 U.S.C.A.Int.Rev.Code, § 3444. Under § 3441(c), the taxpayer may pay the tax as the sales price is collected.

· From this argument it is concluded by appellants that in all cases of the disposition of a specific article—whether by wholesale, retail, use, lease, installment sale, conditional sale or chattel mortgage—a taxable transaction results, and that in each case the amount of the tax is exactly the same, the only difference being that § 3441(c) permits the tax to be paid as the installments are collected. In no case is the tax to be computed on the money collected or gross revenue as was done in appellants' case.

■ To this reasoning the government responded:

Since the articles were used by the lessee-customers and not by the taxpayers, the court properly ruled that the measure of the tax was not on·the fair wholesale market value of the articles so used [§ 316.7 of Treas.Regs. 46 (1940 ed.)], as provided in § 3444, but properly applied to the tax measure as contained in § 3441(c) (1), as in leases, based upon the total rental payments received by the taxpayers under the rental agreement. Further, Congress has consistently placed such a tax on leases except for a period between 1928 and 1932 in order to prevent evasion of taxes by lease contracts. The memorandum by the General Counsel is cited by appellants in support of the proposition that leases are taxable only if sufficiently similar to sales to satisfy the statute, and which they contend is not true of the rental agreement herein. However, as correctly determined by the Tax Commissioner, the facts show that the agreements were only leases, and therefore the commissioner and the court below properly invoked the measure of the tax as prescribed by § 3441(c) (1)

of the Code, which alone applies in the case of "a lease." Since the agreement constituted a lease, the income therefrom was to be taxed by reason of § 3440, as amended, under § 3406(a) (7), as amended. The purpose of the tax law, as agreed to by appellants, was to prevent tax avoidance by application of the manufacturers' excise taxes to all transactions involving the disposition, lease or use of taxable manufactured articles.

Under § 3441(b), as amended, the tax shall be applied whether the article is sold at retail, on consignment, or sold otherwise than through an arm's length transaction at. less than the fair market price. In § 3441(c) (1), as amended, the tax shall apply in case of a lease, an installment sale where title does not pass until later, a conditional sale, or a chattel mortgage arrangement for installment payments. Section 3444 covers instances wherein the manufacturer does not dispose of but uses the article, in which cases the tax is measured by the price at which such articles are sold in the ordinary course of trade by the manufacturer.

To capitulate the government's views: The agreements were leases constituting statutory taxable sales of the taxpayers' products subject to excise taxes on the total gross revenues derived therefrom within §§ 3406(a) (7), 3440 and 3441(c) (1) of the Code, as amended, as interpreted by §§ 316.5 and 316.9, as amended, of Treas. Regulations 46 (1940 ed.), while appellants' views are that subsection (b) of § 3441 is controlling.

Appellants present the ·novel point that the district court erred in determining that appellants did not "use" their product in the operation of a business in which they were engaged within the meaning of § 3444 of Int.Rev.Code. They claim that they are liable to pay an excise tax, based upon the fair wholesale market value of the articles which they "used" within the meaning of § 3444, but not upon the gross revenue from their whole display service. It is urged that the appellants operated a decorative service and .in connection therewith used a taxable article manufactured by them, namely, the rubber products· here in

question. See Fackler v. Commissioner, 6 Cir., 133 F.2d 509, cited to the effect that owners of property who devote it to rental purposes and exclusively to producing taxable income "use" it in a trade or business and are allowed depreciation thereon. Within this premise it is argued that the "use" herein of the products by them within the meaning of § 3444 of Int.Rev.Code is established in the operation of their business, and that it follows that the tax must be computed upon the fair wholesale price of the articles so used. As indicated by the foregoing, the district court was not in agreement with appellants, and we think it was right.

Affirmed.